IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORDISK SYSTEMS, INC., an Oregon corporation,

        Plaintiff,

        v.

SIRIUS COMPUTER SOLUTIONS, INC., a Texas corporation,

        Defendant.

No. 03:15-cv-01540-HZ

OPINION & ORDER

Robert E. Maloney, Jr.
Brian T. Kiolbasa
LANE POWELL, PC
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204-3158

    Attorneys for Plaintiff

Robert Spajic
GORDON & POLSCER, LLC
9755 S.W. Barnes Road, Suite 650
Portland, Oregon 97225

1 - OPINION & ORDER

...
...
...

...

Christine E. Reinhard
SCHMOYER REINHARD, LLP
17806 IH 10 West, Suite 400
San Antonio, Texas 78257

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff Nordisk Systems, Inc. brings claims of intentional interference with economic relations and abuse of process against Defendant Sirius Computer Solutions, Inc. Defendant moves to dismiss, arguing that Plaintiff fails to establish prudential standing, and alternatively, fails to state a claim. Because I agree with Defendant on the standing issue, I grant the motion.

BACKGROUND

      Plaintiff alleges that Plaintiff and Defendant are direct competitors in the IT marketplace. First Am. Compl. at ¶ 6. Third-party Jason Sparks, currently employed by Plaintiff, was formerly employed by Defendant. Id. at ¶¶ 8-10. During his employment with Defendant, Sparks may or may not have been subject to a Non-Solicitation Agreement with Defendant. Id. at ¶ 10 (alleging that Plaintiff and Sparks, in communications with Defendant in summer 2015, denied that Sparks was obligated to the terms of a non-solicitation and non-competition agreement with Defendant); ¶ 12 (alleging that Defendant and Sparks had agreed that Sparks would not be subject to any non-competition or non-solicitation agreement); see also Ex. 1 to First Am. Compl. (copy of unsigned agreement). After Sparks began working for Plaintiff, Defendant commenced an action against Sparks in Texas, which was initially filed in state court and then removed to the United States District Court, Western District of Texas. Id. at ¶ 11. In that action, Defendant has sought to enforce the terms of the Non-Solicitation Agreement. Id. at ¶ 12. Defendant sought a temporary

2 - OPINION & ORDER

restraining order (TRO), which the state court initially granted, ex parte, on August 6, 2015. Id. at ¶ 14; Ex. 2 to First Am. Compl.[1]

Plaintiff alleges that the TRO went beyond the terms of the Non-Solicitation Agreement by prohibiting Sparks from soliciting, diverting, calling upon, etc., "prospective clients" of Defendant's. Id. at ¶¶ 15, 16; see also id. at ¶ 17 (alleging that the TRO "enforced an alleged agreement that was disputed and void, and was overbroad because it included the following terms of the alleged agreement that were not in it - 'prospective customer or client of Sirius.'"). According to Plaintiff, Sparks was required to comply with the TRO and Plaintiff, as Sparks's current employer, was aware of the TRO and was "prevented from having Sparks engage in business with actual or potential customers." Id. at ¶ 17.

Based on these allegations, Plaintiff brings two claims. First, in support of an intentional interference with economic relations claim, Plaintiff contends that it has a contractual relationship with Sparks, that Defendant is not a party to that contract, that Defendant has intentionally interfered with Plaintiff's contract with Sparks by obtaining the TRO which restricts Sparks's relationship with any customer or "prospective customer or client" of Defendant's, and

---

[1] According to the docket in the Texas litigation, the parties voluntarily continued the TRO until the Court ruled on Sirius's motion for preliminary injunction, which it did on October 5, 2015. Sirius Comput. Solutions v. Sparks, No. 05-15-cv-698-DAE, ECF No. 9 (Joint Mot. to Continue; granted in unnumbered "Text Order' dated Aug. 28, 2015); ECF No. 38 (Order Granting Preliminary Injunction). Although the docket in the Texas case is not part of the record here, judicial notice of the actions taken by the Western District of Texas is appropriate. Fed. R. Civ. P. 201(b) (allowing judicial notice of facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned); Smith v. Duncan, 297 F.3d 809, 815 (9th Cir. 2001) (court took judicial notice of state court documents which had a direct relationship to the appeal and were not subject to reasonable dispute), overruled on other grounds, Pace v. DiGuglielmo, 544 U.S. 408 (2005). I do not consider any factual findings contained in the documents but only the existence and nature of the Court's orders.

3 - OPINION & ORDER

that Defendant's actions were accomplished through improper means or for an improper purpose because the TRO that Defendant sought and obtained was invalid, and alternatively, because the TRO was broader then the terms of the Non-Solicitation Agreement and "rendered Sparks unable to perform the job duties for Nordisk he was hired to perform." Id. at ¶¶ 19-23.  As a result of Defendant's actions, Plaintiff alleges that it has suffered damages "in an amount to be proven at trial," including the wages paid to Sparks during the time he was restrained from performing his job duties for Plaintiff and for the loss of profits from sales that Sparks generally made each month based upon his past performance in the industry.  Id. at ¶ 24.  Plaintiff alleges that Defendant knew the Non-Solicitation Agreement was void and the terms Defendant sought to enforce were overbroad but Defendant intentionally and recklessly continued to maintain the TRO with overbroad terms until the entry of a preliminary injunction.  Id. at ¶ 25.

      Plaintiff's second claim is for abuse of process.  There, Plaintiff alleges that Defendant obtained the TRO to enforce an invalid agreement with overbroad terms which then had the effect of improperly restraining Sparks from performing his job duties.  Id. at ¶ 28.  According to Plaintiff, Defendant obtained the TRO without notice to Sparks or Plaintiff, despite knowing that Plaintiff had counsel and that Plaintiff would be directly affected by the TRO.  Id. at ¶ 29.  By obtaining the TRO without notice to Sparks or Plaintiff, Defendant was allegedly acting with an ulterior purpose of hampering, restraining, and obstructing Plaintiff from engaging in its regular business activities through its employees, and in turn, improperly restricting Plaintiff's ability to compete with Defendant in the marketplace.  Id. at ¶ 30.  Plaintiff contends Defendant's actions were willful and were outside the proper scope of the process it was entitled to under the Non-Solicitation Agreement because Defendant sought and obtained relief that it was not entitled to

under that agreement. Id. at ¶ 31. Plaintiff alleges that Defendant has filed burdensome and vexatious litigation in Texas against Sparks which has created an unnecessary burden and distraction to the business of Plaintiff and its employees, including Sparks, and has caused damage to Plaintiff "as described." Id. at ¶ 32.

## STANDARDS

Defendant notes that questions regarding standing have been evaluated under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Compare Elizabeth Retail Props., LLC v. KeyBank Nat. Ass'n, 83 F. Supp. 3d 972, 985-86 (D. Or. 2015) ("While constitutional standing is evaluated under Rule 12(b)(1), prudential standing is evaluated under Rule 12(b)(6)") with Hampton v. Steen, No. 02:12-cv-00470-AA, 2014 WL 5496454, at *7 (D. Or. Oct. 28, 2014) (analyzing prudential standing argument under Rule 12(b)(1)); see also Cetacean Cmty. v. Bush, 386 F.3d 1169, 1175 (9th Cir. 2004) (explaining in regard to "statutory standing," "[i]f a plaintiff has suffered sufficient injury to satisfy the jurisdictional requirement of Article III but Congress has not granted statutory standing, that plaintiff cannot state a claim upon which relief can be granted" and, "[i]n that event, the suit should be dismissed under Rule 12(b)(6)"); Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1108 (9th Cir. 2003) (indicating that the prudential component of standing "precludes the exercise of federal [subject matter] jurisdiction even where the Court's 'irreducible minimum' requirements have been met.").

Here, Defendant raises only a prudential standing argument. In this particular case where I do not consider facts outside of those pleaded in the First Amended Complaint or those properly subject to judicial notice, it makes no difference whether I consider the prudential standing argument under Rule 12(b)(1) or Rule 12(b)(6).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the claims. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Am. Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002). However, the court need not accept conclusory allegations as truthful. See Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations") (internal quotation marks, citation, and alterations omitted).

A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" Id. (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. A complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]" Id. at

679.

## DISCUSSION

"[P]rudential standing [] embodies judicially self-imposed limits on the exercise of federal jurisdiction."  Renx Grp., LLC v. US Bank as Successor Tr. to Bank of Am., NA, No. 03:15-cv-01187-PK, 2015 WL 6445044, at *3 (D. Or. Oct. 23, 2015) (internal quotation marks omitted); see also City of Los Angeles v. Cty. of Kern, 581 F.3d 841, 845 (9th Cir. 2009) ("there exists a body of 'judicially self-imposed limits on the exercise of federal jurisdiction,' . . . commonly referred to as 'prudential' standing[.]") (quoting Allen v. Wright, 468 U.S. 737, 751, (1984)).  "Prudential standing generally requires the plaintiff[']s claim to be based on its own legal rights, as opposed to those of a third-person[.]"  Renx Grp., 2015 WL 6445044, at *3.

The Ninth Circuit recently explained that

> courts have treated the limitation on third-party standing as a prudential principle that requires plaintiffs to assert their own legal rights.  Even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, the Supreme Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.  This rule ensures that plaintiffs possess such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional or statutory questions.

Ray Charles Found. v. Robinson, 795 F.3d 1109, 1118-19 (9th Cir. 2015) (citations, brackets, internal quotation marks, and footnote omitted); see also Mills v. United States, 742 F.3d 400, 407 (9th Cir. 2014) ("Courts typically decline to hear cases asserting rights properly belonging to third parties rather than the plaintiff") ( internal quotation marks omitted).

Defendant argues that Plaintiff lacks prudential standing to bring both the intentional interference and abuse of process claims because the TRO at issue was issued as to Sparks only

7 - OPINION & ORDER

and did not prohibit or apply to Nordisk as a company or to any of its other employees. Defendant argues that any contention that the TRO was overly broad lies only with Sparks - the party against whom the TRO was issued. According to Defendant, to the extent Sparks believed the TRO was overly broad or achieved without proper notice, Sparks had a method in the Texas litigation to seek or modify the TRO. Defendant argues that Nordisk should not be allowed to "conduct an end-run around the standing rules by raising a complaint in Sparks' place that he otherwise had the ability to raise but did not." Def.'s Mot. at 4-5. As Defendant puts it, both of Plaintiff's claims are based on the "third-party" theory that the TRO that issued against Sparks was overly broad and thus, impacted his ability to perform work on behalf of Nordisk.

Plaintiff argues that it asserts its own rights, not those belonging to Sparks. Plaintiff insists it is not attempting to claim that Sparks himself was harmed by the TRO. Instead, it seeks damages in the form of wages it paid to Sparks under his contract with Plaintiff during a time Sparks was unable to work on sales to Plaintiff's actual or prospective customers because they could also be an actual or prospective customer of Defendant's. Pl.'s Resp. at 5-6.[2] Plaintiff also seeks damages from sales that Sparks would have made for Plaintiff's benefit if he had not been improperly restrained by the TRO. Id. at 6. Plaintiff argues that it has prudential standing because it limits its claims to the specific improper conduct affecting its employment contract relationship with Plaintiff as alleged in its First Amended Complaint. Id.

In support, Plaintiff cites to Bancard Services, Inc. v. E*Trade Accces, Inc., 292 F. Supp.

---

[2] This is not an entirely accurate statement because the TRO prohibited Sparks from soliciting, contacting, etc., Sirius's customers, clients, or prospective customers only if they had been a customer, client, or prospective customer within two years of Sparks's separation from employment with Sirius, and importantly, only if they had had business and direct personal contact with Sparks while he was employed by Sirius. Ex. 2 to First Am. Compl. at 3.

2d 1235 (D. Or. 2003), where Judge Hubel, in a Findings & Recommendation adopted by Judge Marsh, addressed whether the plaintiffs had both constitutional and prudential standing to seek a declaratory judgment regarding the validity of contracts entered into between the defendant and third parties.  The plaintiffs and the defendant were competitors in the ATM industry.  The defendant was a party to ATM service agreements with businesses across the country.  The agreements contained a renewal provision that the plaintiff contended was invalid under Oregon law.  At the time litigation commenced, several businesses had signed service agreements with the plaintiffs and the defendant was threatening litigation as to the businesses it had previously been servicing.

After concluding that the plaintiffs met the requirements for constitutional standing, Judge Hubel found that the plaintiffs had prudential standing as well.  Id. at 1244.  Judge Hubel relied on two notable facts.  First, because the plaintiffs were attempting to compete and the competition was being stifled by an allegedly illegal contract, he found that the plaintiffs were asserting their own rights and were not resting their claims on the legal rights or interests of third parties.  Id.  Second, because the plaintiffs had agreed to indemnify at least one of the third-party businesses, the plaintiffs inserted their own obligations and rights into the relationship between the defendant and its customers.  Id.

I agree with Defendant that Bancard is distinguishable.  There is no assertion here that Plaintiff has agreed to indemnify Sparks or otherwise entered into an agreement with Sparks giving Plaintiff a superior right to Sparks in regard to the TRO.  Also, while Plaintiff and Defendant here are business competitors, like the plaintiff and the defendant in Bancard, the agreement at issue there addressed site locations for ATM servicing and thus, the competition for

that business was, in essence, a fight between the plaintiff and defendant.  In contrast, here, the TRO restrains Sparks from maintaining or developing customer relationships on behalf of Plaintiff if those customers were clients, customers, or prospective customer's of Defendant's with whom Sparks had a relationship while he worked for Defendant.  The TRO does not restrain competition between Plaintiff and Defendant here.  It restrains Sparks only and only as to certain customers.  Bancard is distinguishable.

Defendant relies on cases holding that for abuse of process claims, the process must be issued directly against the abuse-of-process plaintiff and thus, Plaintiff here cannot maintain that claim.  Meza v. Meza, No. SA CV 12-01777-GAF, 2013 WL 2338126, at *11 (C.D. Cal. May 25, 2013) (under California law, mother of child lacked standing to bring abuse of process claim based on a conservatorship obtained by the defendants when conservatorship implicated only the rights of the child who was over 18 and the plaintiff did not have custody of the child nor was she the child's guardian; as such, the plaintiff suffered no personal injury to a legally protected interest when the conservatorship proceeding was initiated and granted); aff'd, 617 F. App'x 816 (9th Cir. 2015); RRR Farms, Ltd. v. Am. Horse Prot. Ass'n, 957 S.W.2d 121, 133-34 (Tex. App. 1997) (under Texas law, plaintiff could not maintain abuse of process claim against defendant when plaintiff was not a party to the original action and was not served with process).[3]

---

[3]  In First Interstate Bank of Or., N.A. v. Nat'l Bank & Trust Co. of Norwich, N.A., Nos. 88-558, 88-559, 1990 WL 54529 (D. Or. Apr. 12, 1990), Judge Frye found that a nonrecipient of the process at issue had standing to bring an abuse of process claim.  That case is not controlling.  First, Judge Frye applied New York, not Oregon, law.  Second, the process at issue was an order directing First Interstate Bank to transfer trust assets of which the plaintiff was an income beneficiary.  Thus, while the plaintiff was not a recipient of the process, she had a direct relationship to the property subject to the order.  That is not the case here.  Third, given the nature of the order and the status of the plaintiff, Judge Frye concluded that the plaintiff was a target of the process.  In contrast, Plaintiff here is not the target of the TRO.

10 - OPINION & ORDER

Further replying to Plaintiff's arguments, Defendant notes that the TRO did not prevent Sparks, and by extension Plaintiff, from working at all. It limited Sparks only as to customers of Plaintiff's who had been clients, customers, or potential customers of Defendant's and only as to those whom Sparks had a relationship with during his employment with Defendant. Defendant notes that the TRO did not prevent Sparks from working at all or in other competitive activities. It did not prevent Plaintiff from having its other employees who were not so restrained, solicit business from any customers it thought fell under the "prospective customer" language. Defendant contends that given the TRO language, even with the "prospective customer" restraint, Plaintiff cannot assert that it was "left unable to continue its operations or to compete in the marketplace." Pl.'s Resp. at 7.

I agree with Defendant that Plaintiff lacks prudential standing as to both of its claims. The TRO is not personal to Plaintiff. It is directed to Sparks. While it may have had a collateral effect on any future employer of Sparks who competes with Sirius for customers, the purpose of the TRO was to restrain Sparks. The TRO did not stop Plaintiff from continuing its business. The TRO did not even stop Plaintiff from soliciting Sirius's customers or prospective customers. Plaintiff could solicit all customers - only Sparks was limited and other sales persons working for Plaintiff would have no limitation. The only person restrained was Defendant's former employee pursuant to a contract between Defendant and that employee. Plaintiff was irrelevant. As a result, any harm suffered by Plaintiff was only a byproduct of the TRO directed to Sparks. See Renx Grp., 2015 WL 6445044, at *4 ("The [prudential standing] rule applies even where the plaintiff is negatively affected by an allegedly illegal act that violates only a third party's rights"). That derivative harm is insufficient to satisfy the prudential standing requirement. The rights at

11 - OPINION & ORDER

issue here belong to Sparks, not to Plaintiff. Accordingly, Plaintiff lacks prudential standing to bring either of its claims.

Given my conclusion on the standing issue, I decline to address Defendant's alternative failure to state a claim arguments.

## CONCLUSION

Defendant's motion to dismiss [30] is granted. Plaintiff's Request for Judicial Notice [33] of the Texas Court's Order Amending the Order of Preliminary Injunction, is denied as moot as that Order is not relevant to the resolution of the instant motion and was not considered.

IT IS SO ORDERED.

Dated this 28 day of Dec., 2015

/s/ Marco Hernandez
Marco A. Hernandez
United States District Judge